UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRYSTAL LYONS, ) | CASE NO. 1:10CV2881 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE GEORGE J. |
| ) | LIMBERT |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF ) | **ORDER** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Chrystal Lyons, seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the decision of the Commissioner is affirmed.

I.   **PROCEDURAL AND FACTUAL HISTORY**

On September 26, 2006, Plaintiff filed an application for SSI alleging disability beginning November 24, 2005. ECF Dkt. #11-5 at 145-147.[1] The SSA denied Plaintiff's application initially and on reconsideration. ECF Dkt. #11-3 at 105, 111. Plaintiff filed a request for an administrative hearing, ECF Dkt. #11-4 at 124, and on April 7, 2009, an ALJ conducted the administrative hearing where Plaintiff and Barbara Burk, a vocational expert, offered testimony. ECF Dkt. #11-2 at 70-92. On June 3, 2009, the ALJ issued a Decision denying benefits. *Id.* at 64-69. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 51-53.

On December 21, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On June 4, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #13. On August 3, 2011, Defendant filed a brief on the merits. ECF Dkt. #17. No reply brief was filed.

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from arthritis, asthma, and depression, which qualified as severe impairments under 20 C.F.R. 416.920(c). ECF Dkt. #11-2 at 66. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 416.925 and 416.926). *Id*.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work[2] as defined in 20 C.F.R. 416.967(b) except no climbing of ladders, ropes, or scaffolds; occasional reaching and frequent, but not constant, handling, fingering, and feeling; avoid concentrated exposure to smoke and fumes; simple repetitive tasks, though she is capable of some complex tasks, that are low stress, meaning no production quotas; and minimal contact with the public, meaning no work involving arbitration, confrontation, or negotiation. *Id.* at 67. The ALJ concluded that Plaintiff is capable of performing her past work as a receptionist and order taker, as those jobs do not require the performance of work-related activities precluded by Plaintiff's RFC.

## III. **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* The claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

---

[2]Previous applications for SSI and disability insurance benefits alleging disability beginning on June 15, 2002 were denied.

> 2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));
>
> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human*

*Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.  ANALYSIS

Plaintiff advances two arguments in this appeal.  First, Plaintiff contends that the ALJ erred in not affording controlling weight to the opinion of a treating physician in this case.  Second, Plaintiff asserts that the ALJ erred in his assessment of Plaintiff's credibility with respect to her allegations of pain.  Plaintiff does not challenges the ALJ's findings with respect to her depression or her asthma.

An  ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544.   A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not,

-4-

unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner Of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id*. at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*.

Dr. Jeffrey Conklin, M.D. treated Plaintiff on six occasions, from September 13, 2006 to March 28, 2008, for various physical problems, including asthma, arthritis, and carpal tunnel syndrome. Plaintiff first saw Dr. Conklin on September 13, 2006 at urgent care, Plaintiff complained of tingling and swelling in both of her hands, as well as shooting pain in her left thigh, swelling in her knee, and numbness and tingling on that side. ECF Dkt. #11-7 at 207. She claimed that she had difficulty getting in and out of the bathtub and climbing stairs. Dr. Conklin diagnosed osteoarthritis NOS, carpal tunnel syndrome, joint pain, and asthma. He prescribed Naprosyn and a cockup splint for her wrist. *Id.* at 208. Dr. Conklin saw Plaintiff again on September 18, 2006, when she presented with shortness of breath and wheezing, which he attributed to her asthma. *Id.* at 210.

Plaintiff saw Dr. Conklin a third time on October 5, 2006, when she complained of pain in her right wrist. Dr. Conklin again recommended a cockup splint and Naprosyn, however Plaintiff informed him that Naprosyn triggers her asthma. *Id.* at 212. Dr. Conklin prescribed Neurontin and ordered an electromyogram ("EMG") of her right wrist. The EMG revealed no evidence of acute fracture, dislocation, or bony destruction, and the surrounding soft tissue appeared unremarkable. *Id.* at 222.

Plaintiff underwent an x-ray of her left hip and lumbar spine on July 26, 2007. ECF Dkt. #11-10 at 314-315. With respect to the left hip, there was no evidence of fracture, bone destruction, or dislocation. The hip joint space was maintained. There was minimal spurring of the acetabulum. The physician reading the x-ray diagnosed minimal osteoarthritis. With respect to the lumbrosacral spine, there was a normal lordotic curve, and no evidence of compression fracture, bone destruction, or subluxation. The disc spaces were maintained, and there was mild to moderate spurring seen at L2-L3 and L3-L4. There was a calcification in the abdominal aorta. The physician reading the x-ray diagnosed mild degenerative disc disease.

Plaintiff saw Dr. Conklin a fourth time on July 27, 2007, she complained of pain in her left hip. Dr. Conklin diagnosed arthritis and sciatica. He prescribed Neurontin for sciatic pain. Dr. Conklin observed that Plaintiff's carpal tunnel syndrome had improved without intervention. *Id.* at 318. Notably, Plaintiff saw a chiropractor on four occasions in August and September of 2007. Plaintiff did not report hip or knee pain at any of the four chiropractic appointments. ECF Dkt. #11-11 at 338-341. The chiropractor noted only mild restriction in Plaintiff's range of movement.

Plaintiff saw Dr. Conklin for a fifth time on September 10, 2007. At the appointment, she complained of continuing hip pain. She described difficulty getting in and out of the bathtub and sitting for long periods of time. Dr. Conklin explained to Plaintiff that the results of her hip and back x-rays revealed only minimal osteoarthritis and mild degenerative disc disease. ECF Dkt. #11-11 at 333-334. However, to address Plaintiff's complaints of ongoing pain, Dr. Conklin prescribed Flexiril 10 mg. and Acetaminophen-Codeine #3, in addition to Neurontin 300 mg. *Id.* at 334.

Plaintiff underwent knee x-rays on March 20, 2008. *Id.* at 415-416. The reading physician saw no evidence of fracture or dislocation in the right knee, but noted a small accessory ossicle

-6-

along the posterior aspect, which is a normal variant. There was very mild narrowing of the medial joint space with minute osteophytes involving the tibial eminence secondary to mild degenerative disease. He found no evidence of acute trauma. *Id.* at 415. With respect to the left knee, the reading physician found evidence of small ossification at the site of insertion of quadriceps tendon, a benign finding. A small phlebolith was noted in the posterior soft tissues. An accessory ossicle was noted posterior to the knee joint. The was no evidence of acute fracture or dislocation, or other osseous abnormality, and no evidence of effusion. He found no evidence of acute trauma or joint effusion. *Id.* at 416.

On March 27, 2008, Dr. Conklin completed a medical source statement. ECF Dkt,. #11-12 at 408-409. According to statement, Plaintiff could stand/walk one hour in an eight-hour workday, however, she was incapable of standing/walking without interruption for any period of time. She could sit six hours of an eight-hour workday. She could sit for four hours without interruption. Plaintiff required rest breaks every two hours. She could carry a maximum of five pounds up to one-third of an eight-hour workday, and a maximum of two pounds from one-third to two-thirds of an eight-hour workday. Although Plaintiff was capable of handling, feeling, and engaging in fine manipulation frequently, she could only occasionally reach and engage in gross manipulation. She could rarely climb, balance, stoop, crouch, kneel, or crawl. Likewise, she could never be exposed to heights, moving machinery, temperature extremes, chemicals, dust, noise, and fumes. Plaintiff must use a cane. Dr. Conklin concludes that Plaintiff was in severe pain caused by arthritis, and that she would need an at-will stand/sit option.

At Plaintiff's final appointment with Dr. Conklin on March 28, 2008, her chief complaint was knee pain, which she attributed to a motor vehicle accident that occurred in October of the previous year. ECF Dkt. 11-13 at 411. Based upon the results of Plaintiff's knee x-rays, Dr. Conklin wrote in his treatment notes, "[o]nly concern is level of pain is greater than x-ray findings would suggest. Meniscal injury?" Dr. Conklin noted his intent to refer Plaintiff to orthopedics for further assessment and treatment. *Id.* at 413.

Based upon Dr. Conklin's treatment notes, the ALJ acknowledged that Plaintiff has osteoarthritis in her left hip and knees. However, he also acknowledged that x-rays reveal minimal

osteoarthritis and mild degenerative changes. Having found no change in Plaintiff's physical limitations since a previous decision denying SSI and disability insurance benefits, the ALJ adopted the findings in the previous decision, with additional limitations based upon Plaintiff's depression, which was not raised in the previous applications. The ALJ did not err in giving less than controlling weight to Dr. Conklin's findings with respect to Plaintiff's ability to stand/walk and sit in the medical source statement. Dr. Conklin saw Plaintiff on six occasions, and repeatedly recognized that Plaintiff complaints of pain were inconsistent with test results. His own treatment notes state that Plaintiff walks a gait that was a "little antalgic." ECF Dkt . #11-10 at 317. Furthermore, Plaintiff's own testimony at the hearing contradicts Dr. Conklin's conclusion that she cannot stand or walk for any period of time. The conclusion of state agency reviewing physician, Dr. Charles Derrow, M.D. is more consistent with the treatment notes of Dr. Conklin. Dr. Derrow completed a physical functional capacity assessment in April of 2007. ECF Dkt. #11-10 at 304-311. Finding that Plaintiff's allegations were only "partially credible," he determined that she could lift and carry up to twenty pounds occasionally, life or carry up to ten pounds frequently, and stand/walk for about six hours in an eight-hour day and sit for about six hours in an eight-hour day. *Id.* at 309, 305-306. He did not limit Plaintiff's ability to push/pull. Because portions of Dr. Conklin's medical source are not supported by the record, Plaintiff's first argument lacks merit.

Next, Plaintiff contends that the ALJ failed to appropriately assess her credibility. An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir.1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir.2001) , quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). The threshold for overturning an ALJ's credibility determination on appeal is considerable, such that, in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08–4706, 2010 WL 4810212

at \*3 (6th Cir. Nov.18, 2010), citing *Heston v. Comm'r of Soc. Sec.*, *supra*, and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact." *Sullenger v. Commissioner of Social Security*, No. 07–5161, 2007 WL 4201273 at \*7 (6th Cir. Nov.28, 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir.2007).

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and

statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility as to pain should accord great deference to that determination. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's assessment of a claimant's credibility as to pain must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

At the hearing, Plaintiff testified that she is 58 years of age and suffers from carpal tunnel syndrome, arthritis, and asthma. ECF Dkt. #11-2 at 72. She further testified that she cannot sit or stand for long periods of time. She can only walk for approximately five minutes. *Id.* at 77. She has a tingling sensation in her hand, which sometimes causes her to drop things, and swelling in her knees. *Id.* at 73. Sometimes her thumb "pops." *Id.* at 77. She experiences pain in her left hip and both knees, as well as "a little pain in her back." *Id.* at 77, 73. She testified that she is no longer able to cook, clean the house, or wash clothes. *Id.* at 73. She stopped vacuuming two years prior to the hearing. *Id.* at 80. She cannot sit through church services. *Id.* at 74. She can sit for fifteen to twenty minutes before she becomes "uncomfortable." *Id.* at 77. She has used a cane for the last four years. *Id.* at 74. At the hearing, Plaintiff described her typical day, as follows: She is up at 9:00 a.m. and makes coffee. She props up her legs and reads or watches television. *Id.* at 77. Plaintiff props up her feet most of the time to take the pressure from her knees and back. She prepares lunch in the microwave, and in the afternoon, she naps and watches television. *Id.* at 75. Her daughters visit three or four times a week, they clean the house, wash clothes, and take Plaintiff shopping. *Id.* at 76. Her daughters help her to pay for her medicine and her rent. At the hearing, Plaintiff testified that she takes Neurontin, Zoloft, and "some ibuprofen[,] very little ibuprofen." *Id.* at 76.

The ALJ found that Plaintiff's medical condition could be expected to produce pain, but not the kind of severe pain that Plaintiff alleged. It should be noted that the ALJ did not totally reject Plaintiff's allegations of pain, but rather, he determined that Plaintiff's allegations of the intensity, duration and limiting effects of her symptoms were not substantiated by the objective medical findings or other evidence in the record. An ALJ is not required to accept a claimant's own

-10-

testimony regarding his or her pain.  *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987).   Therefore, Plaintiff's second argument is not well-taken.

     For the foregoing reasons, the decision of the Commissioner is AFFIRMED.


DATE: March 5, 2012

                                         */s/George J. Limbert*
                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE